IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Katrina Tonecia Pinckney, ) | C/A No. 0:15-5059-RMG-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Nancy A. Berryhill, Acting Commissioner ) | |
| of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, Katrina Tonecia Pinckney, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the named defendant because she became the Acting Commissioner of Social Security on January 23, 2017.



§§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the Administrative Law Judge ("ALJ") to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform her past relevant work; and

(5) whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. §§ 404.1520(h), 416.920(h).

# ADMINISTRATIVE PROCEEDINGS

In October 2012, Pinckney applied for DIB and SSI, alleging disability beginning October 12, 2012. Pinckney's applications were denied initially and upon reconsideration, and she requested a hearing before an ALJ. A hearing was held on July 8, 2014 at which Pinckney, who was represented by Thomas C. Newlin, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on August 22, 2014 concluding that Pinckney was not disabled from October 12, 2012 through the date of the decision. (Tr. 15-24.)

Pinckney was born in 1975 and was thirty-seven years old at the time of her alleged disability onset date. (Tr. 23.) She has a high school education and has past relevant work experience as a cashier and a manufacturing inspector. (Tr. 212.) Pinckney alleged disability due to lupus and high blood pressure. (Tr. 211.)

In applying the five-step sequential process, the ALJ found that Pinckney had not engaged in substantial gainful activity since October 12, 2012—her alleged onset date. The ALJ also determined that Pinckney's systemic lupus erythematosus, depression, and anxiety were severe impairments. However, the ALJ found that Pinckney did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ found that Pinckney retained the residual functional capacity to

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, the claimant is able to lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for 6 hours in an 8-hour day, and stand and walk occasionally except that the claimant can only occasionally balance, climb, stoop, crouch, kneel, stoop, and crawl. The claimant must avoid concentrated exposure to hazards such as heights and dangerous machinery, and is limited to simple, repetitive, routine tasks with no ongoing interaction with the public.

*PJG*

(Tr. 19.) The ALJ found that Pinckney was unable to perform past relevant work but that, considering Pinckney's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Pinckney could perform. Therefore, the ALJ found that Pinckney was not disabled from October 12, 2012 through the date of the decision.

The Appeals Council denied Pinckney's request for review on October 28, 2015, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-3.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

PJG

# DISCUSSION

Pinckney argues that the ALJ's residual functional capacity analysis is deficient because he failed to consider Pinckney's ability to function on a regular and continuing basis. Specifically, Pinckney argues that the ALJ failed to account for the remitting and relapsing nature of Pinckney's lupus impairment and that the ALJ failed to account for Pinckney's fatigue. (Pl.'s Br. at 6, ECF No. 14 at 6.) In support of this argument, Pinckney points to her subjective complaints regarding a variety of symptoms that she alleges fluctuated during the course of the period at issue.

A claimant's residual functional capacity is "the most [a claimant] can still do despite [her] limitations" and is determined by assessing all of the relevant evidence in the case record. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In assessing residual functional capacity, an ALJ should scrutinize "all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Social Security Ruling 96-8p further requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's residual functional capacity. Further, "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)) (alteration and omission in original); see also Monroe v. Colvin, 826 F.3d 178, 188 (4th Cir. 2016).

The court finds Pinckney's arguments fail to demonstrate that the ALJ's residual functional capacity analysis was unsupported by substantial evidence or controlled by an error of law. In support of his residual functional capacity assessment, the ALJ explicitly discussed the medical evidence of record, including Pinckney's treatment notes and the medical opinions of Pinckney's

PJG

treating and evaluating physicians, the opinions of the state agency medical consultants, and Pinckney's hearing testimony. (See Tr. 19-22.) Additionally, in compliance with SSR 96-8p, the ALJ explained his resolution of inconsistencies or ambiguities of the evidence in the case record, such as his evaluation of the opinions of Pinckney's treating rheumatologist, Dr. William Edwards, and her treating physician, Dr. Jeffrey Kramer. For example, the ALJ noted that, generally, Pinckney "has been in no acute distress on examination by Dr. Edwards," and that she "has done well overall with control of her musculoskeletal and cutaneous manifestations." (Tr. 20.) The ALJ gave significant weight to Dr. Edwards's assessment that Pinckney was managing her lupus symptoms reasonably well, with no evidence of active disease, noting Dr. Edwards opined that "most of [Pinckney's] clinical issues appear related to [her] anxiety and depression." (Id.; see Tr. 357.) The ALJ also noted that he had accounted for Pinckney's anxiety and depression in his residual functional capacity assessment, and observed that Pinckney had not sought outpatient mental health treatment. (Tr. 21.)

In contrast, the ALJ gave little weight to Pinckney's treating physician, Dr. Jeffrey Kramer. Although Dr. Kramer opined that Pinckney had a less than sedentary residual functional capacity and was unable to work due to her lupus, the ALJ observed that "the medical evidence of record does not support [Dr. Kramer's] claim that [Pinckney's] systemic lupus erythematosus meets the requirements of Listing 14.02." (Tr. 21.) The ALJ also noted that "Dr. Kramer does not specialize[] in rheumatology or other symptoms related to systemic lupus erythematosus," and observed that Dr. Kramer's treatment notes reflected that Pinckney had a varied lifestyle and mild functional limitations. (Id.)

With regard to Pinckney's mental impairments, the ALJ pointed to examination findings from Dr. Cashton Spivey, a consultative examiner, evidencing that Pinckney suffered from depression disorder and anxiety disorder; that she had some difficulty in social, occupational, or school functioning; and that she may display difficulty understanding complex instructions or performing complex tasks in the workplace. (Tr. 22.) However, the ALJ also observed that these examination findings noted that Pinckney was generally functioning pretty well and that Dr. Spivey emphasized Pinckney's independent activities of daily living. (Id.) The ALJ gave significant weight to this opinion and, accordingly, limited Pinckney to the performance of simple, repetitive tasks. (Id.)

Additionally, when determining Pinckney's residual functional capacity, the ALJ considered Pinckney's testimony and her activities of daily living, which included driving, shopping as needed, attending church regularly, reading the Bible, watching television, doing some household chores, and raising her children. (Tr. 18, 20.) Although Pinckney testified that she experienced tightness in her chest, joint pain, and headaches, and that she could sit for only ten minutes at a time, the ALJ found Pinckney's statements to be not credible, and Pinckney has failed to demonstrate that the ALJ's analysis of Pinckney's subjective complaints is unsupported by substantial evidence or controlled by an error of law that would support remand. See Craig v. Chater, 76 F.3d 585, 594-95 (4th Cir. 1996) (explaining the two-step process for the consideration of subjective complaints). Review of the ALJ's decision, considered as a whole, reflects that he considered the relevant factors in evaluating Pinckney's subjective complaints. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (listing the relevant factors that the Commissioner will consider in evaluating subjective complaints). Further, the decision reflects "specific reasons for the finding on credibility, supported by the

*PJG*

evidence in the case record" and is "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p, 1996 WL 374186.[3]  Specifically, when discounting Pinckney's subjective complaints, the ALJ pointed to Pinckney's ability to assist with the care of her children, which activity he stated was inconsistent with the functional limitations alleged by Pinckney, and an instance of medication non-compliance, which he stated indicated that Pinckney's impairments were not as disabling as she alleged.  (Tr. 20.)  Additionally, the ALJ noted that these inconsistencies, as well as the "relatively benign physical and mental examinations and the extent of [Pinckney's] daily activities" did not allow him to find that Pinckney's allegation that she was incapable of all work activity to be credible.  (Tr. 22.)

As stated above, Pinckney argues that her lupus affected her ability to function on a regular and continuing basis.  Pinckney bears the burden of producing evidence demonstrating how her impairments affected her functioning during the relevant time period.  See 20 C.F.R. § 404.1512(c); § 416.912(c); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of

---

[3] Effective March 28, 2016, SSR 96-7p was superseded by SSR 16-3p, 2016 WL 1119029. See 2016 WL 1237954 (correcting the effective date of SSR 16-3p to read March 28, 2016). Because this application was adjudicated prior to the effective date of SSR 16-3p, the court analyzes Baldwin's allegations under SSR 96-7p. See Best v. Berryhill, No. 0:15-cv-02990-DCN, 2017 WL 835350, at *4 n.3 (Mar. 3, 2017) (applying SSR 96-7p under the same circumstances). Regardless, the court observes that SSR 16-3p discontinues use of the term "credibility," but "the methodology required by both SSR 16-3p and SSR 96-7, are quite similar. Under either, the ALJ is required to consider [the claimant's] report of his own symptoms against the backdrop of the entire case record." Id. (alteration in original) (quoting Sullivan v. Colvin, Civil Action No. 7:15-cv-504, 2017 WL 473925, at *3 (W.D. Va. Feb. 3, 2017)); see also Keaton v. Colvin, No. 3:15CV588, 2017 WL 875477, at *6 (E.D. Va. Mar. 3, 2017) ("Effective as of March 28, 2016, SSR 16-3p superseded SSR 96-7p. SSR 16-3p effectively removes the use of the term "credibility" but does not alter the substantive analysis.").

PJG

production shifts to the Commissioner at step five."); Creegan v. Colvin, No. 1:13CV5, 2014 WL 3579659 (W.D.N.C. July 21, 2014) ("It is the claimant's burden, however, to establish her RFC by demonstrating how her impairment impacts her functioning."). Upon review of the record as a whole, the court finds that Pinckney has not demonstrated that the ALJ's residual functional capacity analysis is unsupported by substantial evidence or controlled by an error of law. It is clear from the ALJ's opinion that he considered Pinckney's lupus when determining her residual functional capacity in that he specified additional limitations to accommodate for her impairment, specifically stating: "[I]n light of the claimant's lupus, I have limited the claimant's postural activities and limited her to sedentary work." (Tr. 22.) Additionally, the ALJ noted that, while Pinckney had received medical treatment since her alleged onset date, "the medical evidence of record does not reflect any objective abnormalities to suggest that she is incapable of performing the [] residual capacity assessment." (Tr. 20.) The ALJ further noted that "due to the aforementioned inconsistencies, particularly the relatively benign physical and mental examinations and the extent of the claimant's daily activities, I cannot find the claimant's allegation that she in incapable of all work activity to be credible." (Tr. 22.) To the extent that Pinckney suggests remand is warranted to discuss a particular symptom associated with her lupus based on reports in selective medical records, the court disagrees. Even if the ALJ did not specifically mention a particular symptom, it is clear from the ALJ's opinion that he extensively considered Pinckney's lupus and, by extension, any associated symptoms stemming from that condition, in determining Pinckney's residual functional capacity. Cf. Mascio, 780 F.3d at 636 (finding "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful

review"). Moreover, it is clear from the ALJ's decision that he considered the entire record when determining Pinckney's residual functional capacity.

## RECOMMENDATION

For the foregoing reasons, the court finds that Pinckney has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

June 2, 2017  
Columbia, South Carolina

Paige J. Gossett  
UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).