# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Katrina Tonecia Pinckney, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 0:15-5059-RMG |
| vs. ) | |
| ) | |
| Nancy A. Berryhill, Acting Commissioner ) | |
| of Social Security, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff has brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation ("R & R") on June 2, 2017, recommending that the Commissioner's decision be affirmed. (Dkt. No. 19). Plaintiff filed objections to the R & R and the Commissioner filed a response. (Dkt. No. 21, 22). As explained below, the Court reverses the decision of the Commissioner and remands the matter to the agency for further action consistent with this order.

## Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo*

determination of those portions of the Report and Recommendation to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of all medical sources, including treating physicians. 20 C.F.R. § 404.1527(b). This includes the duty to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). Under what is commonly referred to as Treating Physician Rule, the Commissioner is required to give special consideration to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the

medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2). Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of factors, including the examining relationship, the treatment relationship, length of treatment, nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist. *Id.* §§ 404.1527(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 61 Fed. Reg. 34490, 34492, 1996 WL 374185 (July 2, 1996). Further, all medical opinions must be weighed under the standards of the Treating Physician Rules, including non-treating and non-examining physicians. §§ 404.1527(c), (e)(1)(ii).

When evaluating a claim of disability under the Social Security Act, the Commissioner is obligated to determine the claimant's severe and non-severe impairments and assess whether, despite any such combination of impairments, the claimant retains the residual functional capacity to perform sustained work on a regular and continuous basis. The lowest level of functional capacity for sustained work is sedentary work. Such work generally requires the capacity to sit 6 hours in an 8 hour workday, to stand up to 2 hours in an eight hour day, and to lift no more than 10 pounds at a time. SSR 96-9P, 1996 WL 374185 (July 2, 1996).

## Discussion

It is important to note at the outset the profound work-related limitations the Administrative Law Judge ("ALJ") concluded were present in this claim for disability benefits. The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") for less than the full range of sedentary work. Tr. 19-22. The Commissioner recognizes that a RFC of less than the full range of sedentary work "reflects very serious limitations resulting from an individual's medical impairments(s)" and is "expected to be relatively rare." SSR 96-9P, 1996 WL 374185, at *1. This level of function is the lowest level possible without a claimant being found disabled under the Social Security Act. This "rare" determination was reached by the ALJ only after providing "little weight" to the opinions of Plaintiff's primary treating physician, Dr. Jeff Kramer, and making findings regarding Plaintiff's capacity to sit during a normal work day and Dr. Kramer's treatment notes which are not supported by substantial evidence in the record.

The ALJ concluded that Plaintiff suffered from multiple severe impairments, including lupus, depression and anxiety. The Commissioner recognizes that lupus is "a chronic inflammatory disease that can affect any organ or body system" and can result in severe fatigue, malaise, anemia, mood disorders, anxiety, inflammatory arthritis, and severe pain. 20 CFR Pt. 404, Subpt. P, App. 1, Listing 14.02(1)(a). A lupus patient's condition can be "highly variable" and requires a careful, individualized assessment. *Id.* In light of these potential signs and symptoms, lupus can have a profound and disabling affect on a individual's capacity to sustain work 8 hours a day, 5 days a week.

The Court sets forth below significant deficiencies in the ALJ's decision in this matter, each which independently require reversal and remand.

### A. The ALJ's finding that Dr. Kramer's opinions are inconsistent with the doctor's treatment notes is not supported by substantial evidence in the record.

In support of the ALJ's conclusion that the opinions of Plaintiff's primary care physician, Dr. Kramer were entitled to "little weight," the ALJ found that opinions Dr. Kramer provided in response to a February 2014 questionnaire were "inconsistent with [his] treatment notes." Tr. 21. By way of background, Dr. Kramer, an internal medicine physician, was intimately involved in the management of Plaintiff's complicated medical problems during the entire period in question in this appeal. Over the period extending from October 1, 2012 until May 13, 2014, Dr. Kramer examined and treated Plaintiff on at least nine occasions, more than any other medical provider. Plaintiff was also treated for her lupus during this period by a rheumatologist, Dr. William Edwards. Notably, Dr. Edwards declined to provide a disability assessment for Plaintiff, explaining that this was an area in which he deferred to other providers. Tr. 334. Dr. Kramer thereafter completed a detailed functional assessment of Plaintiff's capacity to work, considering all of her multiple impairments, and the opinions offered in this assessment were the ones in which the ALJ accorded "little weight" because they were allegedly inconsistent with his treatment notes.

In his responses to the February 2014 questionnaire, Dr. Kramer documented that as a result of her lupus Plaintiff suffered from non-erosive arthritis, anemia, severe fatigue, severe joint pain, malaise, mood disorders, and inflammatory arthritis. Tr. 343-344. He opined that she could sit no more than 15 minutes at a time and stand no more than 5 minutes at a time. Tr. 345. He indicated that she could not sit or stand/walk as much as 2 hours in an 8 hour day. *Id.* He further indicated she would need frequent breaks throughout the day and was incapable of even

low stress work, explaining that this was because of "severe pain from lupus." Tr. 345, 347. He further concluded that "patient cannot tolerate work environment due to severe stress that arises from her pain due to lupus." Tr. 347.

Dr. Kramer's questionnaire responses were hardly the first occasion in which he expressed opinions regarding the significant impairments and complications Plaintiff suffered from due to her lupus. In a February 11, 2013 treatment note, Dr. Kramer stated that he believed Plaintiff "should probably be disabled on account of the chronic fatigue that she has, arthritic changes, etc." Tr. 317. On June 4, 2013, Plaintiff presented with chest pain that was non-exertional and her EKG findings were unremarkable. Dr. Kramer observed that Plaintiff's history of lupus and chronic arthritic pain could explain her onset of severe chest pain. Tr. 384. Several months later, in an August 20, 2013 treatment note, Dr. Kramer documented Plaintiff's symptoms of systemic lupus, including joint and muscle pain and generalized malaise and fatigue. He observed that in light of these "serious side effects . . . she should be considered totally disabled." Tr. 378. In an October 22, 2013 office visit, Dr. Kramer again noted "all sorts of problems" associated with Plaintiff's lupus, including chronic musculoskeletal pain and severe headaches. Tr. 376. Dr. Kramer observed after a January 23, 2014 office visit that Plaintiff's depression arose from the fact that "she hurts all the time, she's tired and all this seems related to lupus itself." Tr. 372.

On February 27, 2014, Dr. Kramer examined Plaintiff and then completed the questionnaire responses which the ALJ claimed were not consistent with his treatment notes. In an office note the same day, Dr. Kramer documented the presence of severe pain, anxiety and inflammatory arthritis. He observed that Plaintiff was "very fatigued, she can't really stand or sit

from more than five minutes or so minutes. Any job she would try to work would be really very hard for her to do. She would have to take frequent breaks. She may be out of work for days at a time secondary to her lupus flares." He concluded that "she really can't do any major work." Tr. 370.

The ALJ quoted Dr. Kramer from a April 14, 2014 note in which he stated that Plaintiff "seems to get around pretty nicely" to buttress the argument that Dr. Kramer's treatment notes did not support the questionnaire responses. Tr. 21. A review of the full office note of April 14, 2014 suggests that the ALJ took this comment out of context. Dr. Kramer stated in his treatment note that Plaintiff's lupus "*left her severely handicapped secondary to her chronic pain*" and remained "*limited in her day to day activities secondary to her pain . . . .*" Tr. 368 (emphasis added). The ALJ's quoting of the "get around pretty nicely" language from the April 14, 2014 treatment note without including the obviously significant and limiting preliminary language strikes the Court as highly misleading and designed to support a preordained result.

The ALJ also referenced Dr. Kramer's note of May 13, 2014 indicating that Plaintiff was somehow non-compliant because her Mobic prescription had expired. Tr. 21, 364. A review of the full note indicates that Plaintiff was having a "lot of pain in her chest," which Dr. Kramer believed was related to lupus produced inflammation. He also observed that "due to her medical problems and the severe problems with her lupus, obviously that should be strongly considered" in her disability application. Tr. 364.

In summary, Dr. Kramer repeatedly documented in his treatment notes severe impairments associated with Plaintiff's lupus and his opinion that these lupus-related impairments rendered Plaintiff unable to sustain full time employment. The ALJ's finding that

Dr. Kramer's treatment notes were inconsistent with his medical opinions is not supported by substantial evidence.

**B.  The ALJ's finding that Dr. Kramer's opinions were entitled to "little weight" failed to weigh those opinions in accord with the Treating Physician Rule.**

The Treating Physician Rule requires every medical opinion to be evaluated under standards which are highly deferential to the opinions of treating physicians. Opinions of examining physicians are "generally" accorded more weight than non-examining physicians and more weight is given to physicians who have treated the claimant than those who have not. §§ 404.1527(c)(1), (2). Particular weight is given to the opinions of a treating physician with a lengthy and involved treatment history. *Id.* Other factors to consider include support for the physician's opinions in the record, the consistency of those opinions, and whether the treating physician is a specialist. §§ 404.1527(c)(3)-(5).

The ALJ, in effectively rejecting the opinions of Dr. Kramer, failed to reference or weigh his extensive treatment and examining history and did not note his highly consistent documentation and findings in his treatment notes. Tr. 21. Instead, the ALJ stated in support of his finding to provide "little weight" to Dr. Kramer's medical opinions that the doctor's treatment notes were inconsistent with his medical opinions (which this Court has determined to be a finding not supported by substantial evidence) and he was not a specialist.

On remand, the Commissioner is directed to weigh Dr. Kramer's medical opinions in accord with *all* of the factors contained in the Treating Physician Rule and in light of this Court's rulings in other portions of this order.

### C. The ALJ's finding that Plaintiff can sit 6 hours in an 8 hour workday is not supported by substantial evidence.

The ALJ found that Plaintiff was able to sit for 6 hours in an 8 hour workday. Tr. 19. This was a critical factor in concluding that Plaintiff was capable of performing sedentary work since generally a person must be able to sit for 6 hours in an 8 hour day to meet the minimal requirements for sedentary work. SSR 96-9. The ALJ fails to reference what portion of the record he relied upon to reach this conclusion, which makes appellate review very difficult.

Nonetheless, this Court has carefully reviewed the entire record to determine if there is substantial evidence to support the ALJ's finding that Plaintiff has the capacity on a regular basis to sit 6 hours in an 8 hour day. Plaintiff testified at the administrative hearing that she could sit for "a good 10 minutes, and I kind of just sit and stand, and then I lay down most of the day." Tr. 38. A note in the record prepared by a Social Security staff member stated that Plaintiff "can sit for 15 minutes and then has to stand due to her bilat[eral] leg numbness kicking in . . . . Mostly, she is in her bed . . . ." Tr. 66. Dr. Kramer documented in a treatment note that "she can't really stand [or] sit more than five or so minutes" and stated in his questionnaire responses that she lacked the capacity to sit even 2 hours in an 8 hour workday. Tr. 345, 370.

The only record evidence suggesting that Plaintiff has the capacity to sit 6 hours in an 8 hour workday was provided by two in-house, non-examining and non-treating physicians, Dr. Cleve Hutson and Dr. Mary Lange. Dr. Hutson issued his in-house report on December 13, 2012, and, thus, had no access to Dr. Kramer's extensive office notes or his 2014 responses to the lupus questionnaire. Dr. Hutson provided no factual support in the record for his opinion regarding Plaintiff's capacity to sit. Tr. 51-53. Dr. Lange completed her in-house report on April

24, 2013 and also offered no factual basis for her opinion that Plaintiff had the capacity to sit consistently 6 hours in an 8 hour workday.  Tr. 70-73.

The ALJ expressed considerable skepticism regarding the opinions of these non-examining and non-treating physicians, noting that they were "overly expansive in light of the objective medical evidence in the record . . . ."  Tr. 22.  This Court shares that assessment. Moreover, the Treating Physician Rule provides that the opinions of treating and examining physicians will be weighed more heavily than the opinions of chart-reviewing physicians and that opinions of non-examining and non-treating physicians must be weighed in accord with the full set of standards of the Treating Physician Rule.  §§ 404.1527(c)(1)-(3), (e)(ii).  The Treating Physician Rule goes on to provide that "because non-examining sources have no examining or treating relationship with you, the weight we give their opinions will depend on the degree to which they provide supporting explanations for their opinions."  § 404.1527(c)(3).  In this matter, the two chart reviewing physicians provided no support for their conclusion that Plaintiff had the capacity to sit 6 hours in an 8 hour workday.  Under the well established rules and regulations controlling Social Security disability claims, the unsupported findings of chart-reviewing, in-house physicians do not constitute substantial evidence in the face of uncontested record evidence of the claimant, her primary treating physician, and even a Social Security staff member that Plaintiff lacks the capacity for any type of sustained sitting over an 8 hour workday.

The Court finds that the record does not contain substantial evidence to support a finding that Plaintiff has the capacity to sit for 6 hours in an 8 hour workday.  On remand, the Commissioner is directed to review the standards set forth for sedentary work under SSR 96-9P and to assess promptly the impact of this finding on the prior determination of the ALJ that

Plaintiff retained the RFC to perform less than the full scope of sedentary work.

## Conclusion

Based upon the foregoing, the Court hereby **REVERSES** the decision of the Commissioner and **REMANDS** this matter to the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g). The Court further directs the Commissioner as follows: (1) The Commissioner is directed to assess within 30 days of this order the impact of the Court's determination that there is not substantial evidence in the record to support the finding that Plaintiff has the capacity to sit 6 hours in an 8 hour workday and to determine whether the Court's ruling, in light of the record evidence, now renders Plaintiff disabled under the Social Security Act; and (2) if the Commissioner continues to conclude that Plaintiff is not disabled under the Social Security Act after evaluating the impact of the Court's ruling on the Plaintiff's capacity to sit, the Commissioner is directed to conduct an administrative hearing on Plaintiff's remand within 60 days of this order and a new ALJ decision must be issued within 30 days thereafter. In the event the decision continues to be adverse to the Plaintiff, Appeals Council review shall be completed within 30 days after a request to review by the Plaintiff. These deadlines are imposed because Plaintiff's disability claim has been pending for nearly five years and it appears to the Court that she is likely entitled to a disability finding as a matter of law. Out of respect for the Acting Commissioner, the Court has determined to remand this matter to the Commissioner, rather than simply award benefits, to afford the Commissioner the opportunity to first address Plaintiff's disability claim in light of this Court's rulings.

AND IT IS SO ORDERED.

                                                  _____
                                                  Richard Mark Gergel
                                                  United States District Judge

June 22, 2017
Charleston, South Carolina